IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEVON WILLIAMS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 23-172 |
| | : | |
| **SEAN MCGEE, SEAN SMITH, KEELY L. DEANGELIS** | : | |
| | : | |

## **MEMORANDUM**

**KEARNEY, J.**                                                                                           February 9, 2023

      The amendments to our Constitution guarantee incarcerated persons the ability to access courts and the right to counsel. We today address an incarcerated person's pro se claim a notary at his facility deprived him of access to the courts when she did not notarize his signature on an affidavit he wanted to share with his criminal defense lawyer before trial in state court. He does not allege his lawyer did not or could not present his defenses or discovery. There is no basis to find a counseled incarcerated person is deprived access to the courts when the facility's notary does not notarize his signature on an affidavit for his lawyer during discovery in his state court pretrial criminal process. We cannot think of a fact pattern which would allow the pretrial incarcerated person to amend his Complaint as against the notary and her supervisors. But the incarcerated person is today proceeding before us without counsel. We grant him leave to timely amend if he can do so in good faith to state a claim. We dismiss his Complaint without prejudice consistent with our obligations set by Congress.

**I.     Alleged pro se facts.**

      The Commonwealth detained Devon Williams on criminal charges in the Montgomery County Correctional Facility while awaiting a July 2022 trial in the Montgomery County Court of

Common Pleas.[1] Mr. Williams, represented by counsel, prepared an affidavit he intended to give his attorney relating to discovery.[2] Mr. Williams requested the Facility's Notary Public Keely DeAngelis to notarize his affidavit on June 14, 2022.[3] Notary DeAngelis refused to do so.[4] Mr. Williams alleges Notary DeAngelis's refusal denied him the opportunity to provide his attorney with "proof" in the form of "a witness to a verified statement concerning discovery" in defense of the criminal charges against him.[5] Mr. Williams does not allege anyone denied him access to his attorney. Nor does Mr. Williams allege he could not otherwise advise his attorney of a defense.

Mr. Williams filed a grievance a week later challenging Notary DeAngelis's refusal to notarize his document.[6] The Facility did not respond to Mr. Williams's grievance, prompting him to submit an "Inmate Grievance Appeal" form to the Facility on July 14, 2022.[7] The Facility never responded to Mr. Williams's appeal.[8]

A Montgomery County jury later convicted Mr. Williams after a three-day criminal trial.[9] Judge Wendy Rothstein imposed sentence six weeks ago.[10] Mr. Williams is currently incarcerated at the Montgomery County Correctional Facility.

**II.   Analysis**

The sentenced Mr. Williams promptly sued Notary DeAngelis, the Facility's Warden Sean McGee and Assistant Warden Sean Smith in their official and individual capacities alleging they violated his First Amendment and Fourteenth Amendment due process rights. He seeks $100,000 in compensatory damages, $100,000 in punitive damages, a declaration Defendants' policy and practice of denying him "an opportunity to notarize a typed up Affidavit that was to be sent" to his attorney in his criminal case "concerning much needed discovery" violates the Fourteenth Amendment's due process clause, costs and expenses, and any other relief the court deems just and proper.[11]

2

We granted Mr. Williams's motion to proceed *in forma pauperis*.[12] Congress directs we dismiss a claim filed without paying fees which we find fails to state a claim on which relief may be granted, is frivolous or malicious, or seeks monetary relief against a defendant who is immune from such relief.[13]

When considering whether to dismiss a complaint for failure to state a claim under section 1915(e)(2)(B)(ii), we apply the same standard used under Federal Rule of Civil Procedure 12(b)(6).[14] We accept all factual allegations as true and construe those facts in the light most favorable to the plaintiff to determine whether he states a claim for relief plausible on its face.[15] We must be "mindful of our 'obligation to liberally construe a pro se litigant's pleadings' … particularly where the pro se litigant is imprisoned."[16] We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[17] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."[18]

Mr. Williams brings his claims under 42 U.S.C. § 1983.[19] Congress does not confer substantive rights through section 1983; rather, it is the vehicle used to bring federal constitutional claims in federal court. Mr. Williams must plead two elements to proceed on his civil rights claims: (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[20]

Mr. Williams's claim is based on Notary DeAngelis's refusal to notarize Mr. Williams's affidavit needed for pretrial discovery in his criminal case and Warden McGee and Assistant Warden Smith's conduct in approving an unconstitutional policy or custom at the Facility, presumably by allowing Notary DeAngelis to refuse to notarize his document. Mr. Williams claims

this conduct violates both his First Amendment rights and his Fourteenth Amendment due process rights. We dismiss his claim consistent with our obligations imposed by Congress in section 1915.

We liberally interpret Mr. Williams's claim as based on a denial of his access to courts. The right of access to the courts is a fundamental constitutional right.[21] Supreme Court jurisprudence grounds the constitutional basis for the right in the Privileges and Immunities Clause of Article IV, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment's Equal Protection and Due Process Clauses.[22]

In *Bounds v. Smith*, the Supreme Court held the fundamental constitutional right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."[23] The Supreme Court clarified the limits of *Bounds* twenty years later in *Lewis v. Casey*.[24] The Court held *Bounds* did **not** establish a freestanding right to a law library or to legal access, but the "(already well-established) right to *access to the courts*."[25] In such cases, the Court held an inmate must show "actual injury" from the alleged denial of access to the courts.[26] And the actual injury requirements "is not satisfied by just any type of frustrated legal claim," explaining nearly all of the access-to-courts claims in the *Bounds* line of cases involved attempts by inmates to pursue direct appeals from their convictions or habeas petitions.[27] The "tools" required to be provided to inmates to access the courts "are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."[28]

The Court further clarified in *Christopher v. Hanbury* the parameters of the right of access to the courts four years after *Lewis*: "the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."[29] A prisoner must allege both

an "anticipated or lost" claim and "the official acts frustrating the litigation."[30] And where, as here, an access-to-courts claim looks backward, "the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought."[31]

Our Court of Appeals analyzes access-to-courts claims under both the First and Fourteenth Amendments.[32] We construe Mr. Williams's challenge to Notary DeAngelis's refusal to notarize his affidavit needed in his criminal proceeding as a denial of access-to-courts claim and not a Fourteenth Amendment procedural due process claim.

Incarcerated persons may only proceed on an access-to-courts claims in two types of cases: (1) challenges – direct or collateral – to their sentences; or (2) conditions of confinement.[33] And in these two types of cases, an incarcerated person claiming a prison official's actions prevented him from presenting a past legal claim must show (1) he suffered "actual injury," meaning he "lost a chance to pursue a 'nonfrivolous' or 'arguable' underling claim"; and (2) he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access claim.[34] An incarcerated person must allege the "underlying arguable claim well enough to show that it is 'more than mere hope,' and must describe the 'lost remedy.'"[35]

Mr. Williams fails to meet these pleading requirements. First, Mr. Williams's access-to-courts claim arises in the context of pretrial discovery in the criminal case against him. There is no allegation the failure to notarize his affidavit relating to the discovery is the basis for a challenge to his sentence or conditions of confinement. And even if the failure to notarize falls within the two types of cases recognized by the Supreme Court in *Lewis*, Mr. Williams fails to allege "actual injury" stemming from the alleged failure to notarize an affidavit for use in discovery. He fails to allege an underlying nonfrivolous challenge to his underlying criminal prosecution he could not pursue because Notary DeAngelis refused to notarize his affidavit. There is no alleged injury

traceable to the refusal to notarize his affidavit. He alleges he "suffered loss of full disclosure of discovery" in his criminal case but does not explain how the Notary's decision caused actual injury.[36]

Even if he identified an injury traceable to the refusal to notarize his affidavit, there are "many acceptable ways" to satisfy Mr. Williams's right to access the courts.[37] The right to access the courts is satisfied by appointing Mr. Williams counsel.[38] A public defender represented Mr. Williams in the criminal action.[39] The docket sheets from his criminal action confirm his legal representation. Mr. Williams admits representation by counsel in his criminal proceedings by the Montgomery County Public Defender.[40] Mr. Williams had full access to the courts through his court-appointed counsel.

Representation by counsel in the underlying criminal case satisfies Mr. Williams's right to access the courts. His access-to-courts claim is not plausible as presently pleaded. We cannot imagine how he could plead this claim. But he is proceeding pro se and we will allow him an opportunity to timely amend if he can plead facts in good faith under the Law.

## III. Conclusion

An incarcerated person with counsel did not plausibly plead a denial of access-to-courts claim based on a notary's refusal to notarize an affidavit he wanted to provide his counsel. But we are not certain he can never do so based on presently unpleaded facts. We dismiss Mr. Williams's claims without prejudice to timely amend his claims if he can do so in good faith under the Law.

---

[1] ECF Doc. No. 1 § I, ¶ 1, § III, ¶ 6 at 21–22. All references to page numbers in ECF Doc. No. 1 are to the numbers supplied by the CM/ECF docketing system.

[2] *Id.*

[3] *Id.*

---

[4] *Id.*

[5] *Id.* § V, ¶ 18 at 24.

[6] *Id.* at 16, 18.

[7] *Id.* at 20.

[8] *Id.* § IV, ¶ 11 at 23–24.

[9] *Id.* § I, ¶ 1 at 21; *Commonwealth v. Williams*, Docket No. CP-46-CR-0002148-2021 (Montgomery County Court of Common Pleas). We may take judicial notice of the Commonwealth of Pennsylvania's dockets. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

[10] *Commonwealth v. Williams*, Docket No. CP-46-CR-0002148-2021 at 1.

[11] ECF Doc. No. 1 § VI at 8, § VI, ¶ 21 at 25.

[12] ECF Doc. No. 5.

[13] 28 U.S.C. § 1915(e)(2)(B).

[14] *Elansari v. Univ. of Pa.*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[15] *Id.* (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[16] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

[17] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244).

[18] *Id.* (quoting *Mala*, 704 F.3d at 245).

[19] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, …" 42 U.S.C. § 1983.

[20] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

---

[21] *Lewis v. Casey*, 518 U.S. 343, 350 (1996).

[22] *Christopher v. Harbury*, 536 U.S. 403, 415, n. 12 (2002) (collecting cases).

[23] 430 U.S. 817, 828 (1977) (footnote omitted).

[24] *Lewis*, 518 U.S. at 349–55.

[25] *Id.* at 350 (emphasis in original).

[26] *Id.* at 351–52.

[27] *Id.* at 354.

[28] *Id.* at 355.

[29] *Christopher*, 536 U.S. at 414–15.

[30] *Id.* at 415.

[31] *Id.*

[32] *See e.g. Heleva v. Walter*, No. 22-1762, 2022 WL 3657185, at * 1 (3d Cir. Aug. 25, 2022) (per curiam) (mishandling of legal mail in the prison); *Prater v. City of Phila.*, 542 F. App'x 135, 137 (3d Cir. 2013) (per curiam) (denial of access to law library); *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (confiscated legal materials).

[33] *Monroe*, 536 F.3d at 205 (citing *Lewis*, 518 U.S. at 346).

[34] *Id.* (quoting *Christopher*, 536 U.S. at 415).

[35] *Id.* at 205–06 (quoting *Christopher*, 536 U.S. at 416–17) (footnote omitted).

[36] ECF Doc. No. 1, § V, ¶ 18 at 24–25.

[37] *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam).

[38] *Diaz*, 532 F. App'x at 63. *See also Prater*, 542 F. App'x at 137, n. 4 (inability to access law library does not state an access-to-courts claim because appointment of counsel is sufficient to provide a pretrial detainee with "meaningful access to courts") (quoting *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *Brown v. Warden Pike Cnty. Corr. Facility*, 693 F. App'x 176, 177 (3d Cir. 2017) (appointment of counsel is sufficient to provide prisoner meaningful access to the courts); *Hernandez v. Delaware Cnty.*, No. 22-4187, 2023 WL 349254, *6 (E.D. Pa. Jan. 20, 2023) (dismissing access-to-courts claim where pretrial detainee had representation during the underlying criminal case); *Pumba v. Miller*, No. 22-2050, 2022 WL 11804036, *4–*5 (E.D. Pa. Oct. 20, 2022) (dismissing access-to-courts claim for denial of use of law library where counsel

---

represented prisoner during criminal case); *Simmons v. Gianetta*, No. 21-4962, 2022 WL 1238964, at *7 (E.D. Pa. Apr. 27, 2022) (dismissing access-to-courts claim for denial of access to the law library while in segregation where counsel represented prisoner in underlying criminal case).

[39] *Commonwealth v. Williams*, Docket No. CP-46-CR-0002148-2021 at 23.

[40] ECF Doc. No. 1, § I, ¶ 1 at 21 (alleging the affidavit Notary DeAngelis refused to notarize "was to be mailed to my attorney.")